FEB 8 1978

Ms. Allie B. Latimer
General Counsel
General Services Administration
Washington, D.C.  20405

Dear Ms. Latimer:

In your letter of January 12 you have asked for our views concerning the applicability of the Foreign Gifts and Decorations Act, 5 U.S.C. § 7342, as amended by Pub. L. No. 95-105, § 515, 91 Stat. 862 (see 5 U.S.C.A. § 7342 (Supp. III 1977)) (the "Act"), to certain gifts received by and in the possession of Tricia Cox and Julie Eisenhower, the daughters of former President Richard M. Nixon, from foreign governments and their representatives.1/  We understand that most of those gifts were wedding presents received while Mr. Nixon was in office.2/

The Act implements Article I, Section 9, Clause 8 of the Constitution, which provides as follows:

No Title of Nobility shall be granted by the
United States:  And no Person holding any Office
of Profit or Trust under them, shall, without
the Consent of the Congress, accept of any present,
Emolument, Office, or Title, of any kind whatever,
from any King, Prince, or Foreign State.

---

1/    The amendment to the Foreign Gifts and Decorations Act
concerning receipt of gifts from foreign governments
was not effective until January 1, 1978.  Although Congress
made a number of changes, the basic thrust of the Act is
the same.  All references to the Act hereafter are to the
pre-amendment provisions in effect at the time of the gifts
in question.

2/    A list of the gifts accompanied your letter.

The purpose of prohibiting acceptance of such gifts and decorations is to prevent foreign influence over officers of the United States. 2 Farrand, The Records of the Federal Convention of 1787, p. 389 (1937); 24 Op. Att'y Gen. 117 (1902).

To effectuate that purpose, the Act barred employees of the United States, defined to include the President and members of his family and household, from requesting or encouraging the tender of a gift or decoration from a foreign government.3/ In the event such a gift or decoration was tendered, Congress consented to its acceptance in two situations: (1) where the gift was of minimal value and tendered

_____

3/ The pertinent statutory language reads as follows:

(a) For the purpose of this section [5 U.S.C. § 7342]-

    (1) "employee" means -

       \*        \*        \*        \*        \*

    (D) the President;

       \*        \*        \*        \*        \*

    (F) a member of the family and household of an individual described in subparagraphs (A)-(E) of this paragraph."

We note that while the constitutional clause covers only persons "holding any Office of Profit or Trust under [the United States]", the statute covers persons who themselves do not hold such an office. But we assume for present purposes that Congress' exercise of power as to such persons could be justified under the necessary and proper clause of the Constitution. Art. I, § 8, Cl. 18. See Neely v. Henkel, 180 U.S. 109, 121 (1901).

- 2 -

or received as a souvenir or mark of courtesy; and (2) where the gift was of more than minimal value but refusal was likely to cause offense or embarrassment or otherwise adversely affect the foreign relations of the United States. A covered individual was permitted to retain a gift as his or her own only in the first situation. If a gift was of more than minimal value, it was deemed to have been accepted on behalf of the United States for its use and disposal. The regulations promulgated by the Secretary of State under the Act as they existed as the times in question[4]/ defined gifts of minimal value to be those worth not more than 50 dollars. 22 CFR § 3.3(e) (1977). All other gifts from foreign governments were to be turned over to the Chief of Protocol of the State Department for disposal. Id. § 3.5(c).

These restrictions could apply to the gifts to either Tricia Cox or Julie Eisenhower only if each was a member of the family and household[5]/ of an individual covered by the Act and the implementing regulations[6]/ The legislative history of the Act did not discuss the meaning of the phrase "member of the family and household." But, the regulations issued under the Act interpreted the phrase, defining it to mean "a relative by blood, marriage, or adoption who is a resident of the household." 22 CFR § 3.3 (1977). In the absence of congressional guidance with respect to the meaning of "member of the family and household," it was within the discretion of the Secretary of State to adopt in his regulations any definition reasonably related to the purposes of the Act. Mourning v. Family Publications Service, Inc., 411 U.S. 356 (1973). Since the meaning adopted appears to be within the common understanding of the phrase, we believe the regulation to be reasonable.

4/    The Act authorized the President to issue regulations to carry out its provisions. Foreign Gifts and Decorations Act, § 7, 80 Stat. 952. The President delegated that authority to the Secretary of State. Exec. Order No. 11,320, 3 CFR 605 (1966-1970 compilation).

5/    The current version of the Act replaces the phrase "member of the family and household" with "the spouse . . . . (unless such individual and his or her spouse are separated) or a dependent (within the meaning of section 152 of the Internal Revenue Code of 1954)." 5 U.S.C.A. § 7342(a)(1)(G). The legislative history pertaining to the 1977 amendment to the Act contains no mention of the reasons for that change.

6/    Among the individuals covered by the Act are members of the uniformed services. We understand that the husbands

(Cont. on p. 4)

- 3 -

You have provided us with the following facts pertinent to a determination of the applicability of the Act to the gifts in question. Julie Nixon married David Eisenhower on December 19, 1968. At that time Mr. Nixon was President-elect. The list of gifts accompanying your letter indicates that Julie Eisenhower received three gifts from representatives of foreign governments between August 1969 and May 1970. During that period she did not reside with the President.

Tricia Nixon married Edward Cox on June 12, 1971, while Mr. Nixon was President. The list of gifts indicates that Tricia Cox received numerous wedding gifts from representatives of foreign governments between April 1971 and January 1972. From January 20, 1969 until her marriage, Tricia Cox resided at the White House. In addition, our information is that Tricia and Edward Cox left the White House after their wedding to vacation at Camp David, the Presidential retreat in the Catoctin Mountains of Maryland.[7] The couple apparently stayed there until about July 5, 1971 when they moved to an apartment in New York City for the remainder of the summer. N.Y. Times, June 8, 1971, at 46, col. 5; id. June 24, 1971, at 46, col. 1; id. June 26, 1971, at 11, col. 3; id. Jul. 7, 1971, at 42, col. 1.

We have reached the following conclusions concerning the applicability of the Act.

## GIFTS TO JULIE EISENHOWER

The gifts to Julie Eisenhower are not covered. At the time of their receipt, she did not meet the definition of

---

[6] (Cont.)

of Tricia Cox and Julie Eisenhower both were members of the uniformed services following their marriages. The listed gifts to Tricia Cox and Julie Eisenhower were all received, however, before their husbands became members of the services and subject to the restrictions of the Act.

[7] Camp David is a facility maintained by the Department of the Navy in the Catoctin Mountain National Park.

- 4 -

"member of the family and household" in the regulation as she was not a resident of the President's household. Consequently, the three listed gifts received by Julie Eisenhower from representatives of foreign governments are her personal property.

## GIFTS TO TRICIA COX

It is our opinion that nearly all of the wedding gifts you list are covered by the Act. In our view, Tricia Cox was a "member of the family and household" as defined in the regulations until she moved to New York City with her husband sometime around July 5, 1971. She lived at the White House with her parents from January 20, 1969, to June 12, 1971, the date of her marriage. She then stayed with her husband at Camp David until about July 5, 1971. We think it plain that her status as a resident of the President's household did not end until she left Camp David and moved to a private apartment in New York City with her husband.[8] The wedding gifts Tricia Cox received from representatives of foreign governments up until her move to New York City are therefore subject to the restrictions of the Act. It is not unreasonable to suppose that refusal of those gifts would have been likely to cause offense or embarrassment to their foreign donors. Consequently, acceptance of those gifts was appropriate. But, the gifts must be deemed to be the property of the United States unless the value of each gift is less than 50 dollars. The wedding gifts received when Tricia Cox was no longer a resident of the President's household are, however, her personal property.

The foregoing analysis is incomplete in one respect. It does not take into account the fact that a number of the

---

[8]    We note that residence is not necessarily synonymous
       with domicile. For example, a person may have only
one domicile at a time but may have more than one residence.
Corwin Consultants, Inc. v. Interpublic Group of Companies,
Inc., 512 F.2d 605 (2d Cir. 1975). We are not aware of any
established interpretation by the Department of State of
the term "resident" as used in the regulation, and believe
our interpretation is consistent with the general usage of
the term and with the purposes of the Act and regulation.

- 5 -

gifts received both before and after the wedding were addressed to Tricia and Edward Cox jointly. Since Edward Cox was probably not covered by the Act and the regulation during the period that the gifts were received,9/ any ownership interest he has in those gifts would not appear to be affected. But, it is not difficult to dispose of that interest as a practical matter. We are unaware of any reason for a representative of a foreign government to send a gift to Edward Cox other than his relationship to one of the President's daughters. It is only realistic to recognize that the wedding gifts were sent as a friendly gesture to the President of the United States and were intended for the President's daughter. The inclusion of Edward Cox' name on a gift card does not alone suggest an intent on the part of the donors to benefit him personally. Moreover, the purpose of the Act would be disserved were we to conclude that Edward Cox has an ownership interest in the wedding gifts. The Act expressed the intent of Congress to preclude certain family members of covered individuals from personally accepting valuable gifts tendered by representatives of foreign governments. That intent would be circumvented at least in part by permitting such an individual to establish an indirect claim to foreign gifts through his or her spouse. For those reasons we conclude that Edward Cox has no cognizable interest in wedding gifts addressed jointly to him and his wife by representatives of foreign governments.

In summary, it is our opinion that the gifts to Julie Eisenhower are not subject to the restrictions of the Act. The wedding gifts to Tricia Cox received while she was a member and resident of the President's household, however, are within the scope of the Act.

Sincerely,

John M. Harmon
Assistant Attorney General
Office of Legal Counsel

9/ It might be argued that Edward Cox became a "resident of the household" of the President during his stay at Camp David. Because of the conclusion we reach with respect to his interest in the wedding gifts, we need not decide whether his vacation stay of several weeks can amount to residency for the purpose of the regulation.

- 6 -